May it please the Court, I am Joshua Glellen, appearing on behalf of the claimant, Ms. Morgan, with respect to both her husband's disability claim and her claim for death benefits under the Longshore and Harbor Workers' Compensation Act. We challenge the legal validity of the ALJ's decisions on each of the two claims and of the Board's affirmance of I don't quite see how you stretch causation far enough to get from a bum knee to crashing his Corvette into a telephone pole. I mean, it looks to me like there are a whole lot of steps in between. Bum knee causes him to not be able to do his job. Not being able to do his job leads him to hang around pool halls, get drunk, and take up with a girlfriend. Hanging around pool halls, getting drunk, and taking up with a girlfriend causes him to drive his Corvette recklessly. And driving his Corvette recklessly drunk causes him to crash into a telephone pole and kill himself. That kind of reminds me of Paul's breath. It's just so remote. I mean, I don't think he even had but-for cause. He could have crashed into a telephone pole if he'd never worked for the employer at all. And even if you have but-for cause, I can't see where you have substantial factor cause. Well, respectfully, I think we do. And I think the ‑‑ Tell me how. I think the workers' compensation concept of causation is looser than the tort proximate cause requirement. I mean, I think proximate causation ‑‑ If it's an on-the-job injury, the relationship to work pretty much has to be that it's there, and that's enough. Certainly that's not a problem when, to the extent an injury does occur on the job. But consequential injuries are a special class that is dealt with in general workers' compensation law. Obviously, the board did not reach the validity of the ALJ's ruling that there was not adequate causation here. We haven't brought that to the court because the board didn't reach it. And in our experience, when the board only reaches one of the grounds of the ALJ's decision and affirms on that basis, if we had briefed it to this court, we would not have expected this court to reach it anyway. All that we have before you is the sole basis of the board's affirmance of the ALJ's denial of the death claim, which was the untimeliness ground. So we haven't brought that to you, and we ‑‑ On the death. Excuse me? On the death. On the death claim, yes. So that's all that's before us? That's all that's before you on the death claim is the board's affirmance of the ALJ's untimeliness ruling on the death claim. Could you address the ‑‑ getting to the mental incompetence issue, could you address what standard we use? The term mentally incompetent is not defined in the statute or by regulation. We have a very old case, Hogue v. Terminal Refrigerating from the D.C. Circuit, which is the only case I found that interpreted it. Should we look to other areas of law, and if so, which ones? I completely agree the only ‑‑ surprisingly, after, what, 83 years of this statute, that is the only appellate authority on the Section 13C timeliness tolling. And it does not articulate any standard other than in that case, where the claimant had in fact been committed and had a traumatic brain injury, yes, okay, that one satisfied it. That doesn't establish a standard. The general law that we would have you look to is general workers' compensation law. We've cited the leading multivolume workers' comp treatise, the Larson treatise, for its statement of general state workers' compensation law under similar provisions, similar statutory tolling provisions. I think the point of it is simply the same standard that equitable tolling aims for but construes very strictly. Where this is a statutory tolling provision, there's not the same basis for a very strict construction of the doctrine. Before we get to the difficulties of determining the standard, I'd kind of like to see the evidence to determine it on. You need evidence that she was so upset about the death of the husband that she was divorcing. And I think she might have had a TRO against him. I can't remember for sure. No, I think there was. That she was just unable to file anything or figure out that losing his job is what led to crashing his car. And I think we can't do that.  there's no evidence that she had covered up a single offense, and the court ran into a telephone pole. Now, where's the medical evidence? We are not going to do that. There is no medical evidence. There is only lay evidence. Just the relatives saying, gee, mom was really upset. It wasn't. It wasn't a child. But, yes, it was relatives and friends who took care of her completely during the first several months after her husband's death. We think the central factor of the standard of mental incompetence is, was she competent to look after her own affairs, to protect her? Well, let's talk about that. The ALJ made findings of three incidents where Vicki Morgan did handle her own affairs during this period. Not within this period, Judge Bea. I'm sorry. That, I think, is the correct one. That was after the period is done? It was well after the initial. We, in order to make this claim timely, she need only have been incompetent for the first eight weeks after his death. The ALJ misunderstood that, but I believe that the defense before this Court has acknowledged that that was wrong. Is that definitely the way the law works? I mean, often if there's a statute of limitations of, say, a year, you could have months pulled out of that year when you couldn't have done a thing, and it doesn't mean you're extended by that number of months. The reason that it's a year instead of a week is the idea is sometime within a year, you ought to be able to get yourself together and act. I don't think that really is the underlying theory. Is there another authority here that says whatever time you're incompetent during the year gets added to the year? Well, Judge Kleinfeld, we haven't addressed that because I understand the respondents to acknowledge that that was error by the ALJ in thinking that she had to have been mentally incompetent for the entire year following his death in order for this tolling provision to save her claim. She filed the – the claim was filed 14 months, not quite 14 months, after the death. And I believe that my brother for the defense acknowledges that the rule is that she has a year from the time she regained mental competence. Now, that – I don't think that was until several months beyond. That's true for somebody who's, say, schizophrenic at the time of the incident, giving rise to the cause of action. And they go into remission a year and a half later after successful medication. Yes, or someone who is a minor at the time and attains their majority 51 weeks after the death. With almost any tort case, say there's a two-year statute of limitations, it's routine car accident, tort case. There are sure to be times within the two years that the person is incompetent to file. For example, if it's personal injury, the plaintiff was probably in the hospital for days or weeks and heavily doped up. But that doesn't mean that when he files a day late, he gets tolling. Well, he probably doesn't have the benefit of a statutory tolling provision. Now, whether equitable tolling is subject to the construction that you're propounding, it may very well be. I don't know. But this is a statutory tolling provision, and I think it is different. And I think the suggestion that someone who turns 18 364 days after his or her father was killed has only one day to file is not consistent with the terms of Section 13C. That would be the consequence of saying the incapacity, whether because of minority or incapacity, must last throughout the tolling period. So your position is that the fact that she sold her house and sought additional disability benefits or protested cascade general disbursement of the 401K took place outside the period of time when she was mentally incompetent? That's correct. What was the period of time she was mentally incompetent? Well, it was three or four months. Is that what you're saying? Yes, three or four months. From the death of Dennis. Correct. And she had a year from the time she became aware of the relationship between the injury or death and the employment. Subject to this tolling provision. Correct. Subject to this tolling provision of mental incompetence. Correct. Correct. Why shouldn't we construe C to mean that the kind of mental incompetence they're talking about is only the sort of mental incompetence that justifies appointment of a guardian? I wouldn't have a problem with that. I think if someone had taken her to court and said she's not capable of protecting her interests, if someone were trying to prey on her. You would need medical evidence for that. Courts are reluctant to impose guardians on people because the guardians can steal all their money. You need some medical evidence. I mean, if I were a superior court judge looking at this for guardianship, I would think maybe she's real depressed because the guy died. Maybe she's real upset because she was in the process of divorcing him and feels like somehow it's her fault. Maybe she just has been depressed for a long time and that's why he wound up taking up with a girlfriend. I don't know. Is there any medical evidence relating to those two months? There is not. She had caring friends and relatives who moved in with her and took care of her affairs, even wrote the checks for her and put them in front of her to sign. That's all she did. She was totally passive. When they took her to the attorney who had represented her husband on his knee injury claim, she was essentially nonresponsive and did not participate in the conversation. When did she retain the attorney? When did she? Retain an attorney, Mr. Preston, I believe. She went to Mr. Preston to retain him to where he had already been retained by her husband. And when her husband was dead, she was taken by her sister and friends to Mr. Preston's office where she signed up to have him continue prosecuting that claim. And when was that? I don't have the date in my notes. What was the date? Was that after the two-month period or was that within the two-month period? It was within the two-month period that she was taken him. Not by far, but it was within that two-month period. But that was not at her initiative. She was taken there for that. And she didn't explore with him the possibility that there might be a valid death benefits claim. It did not occur to her. She was not thinking at all at that point. Was she incompetent to retain Mr. Preston? Excuse me? Was she incompetent to retain Mr. Preston? Was her signature on that document invalid? Conceivably. That's not something that anyone has challenged. And in fact, once she was herself, she – once she, as she put it, emerged from the fog several months later, she found other counsel. She was – once she looked at it, she was not satisfied with Mr. Preston's representation, even on the disability claim, and came to speak with another attorney who asked her the questions and recognized that there was potentially a compensable death claim as well and immediately filed it. So when did she hire Mr. Rabinowitz? My notes say that he filed the claim in June 2003. So that was almost a year later. That's correct. That's correct. And that is when she came to see him for the first time. I think the claim was filed the day after he – she came to his office. But the various inquiries that the employer relies on here as showing competence or ability to deal with her affairs at an earlier date, yes, they were before the year expired, but no, they were not within those first several months or within the first two and a half months. Anyway, the very first thing was an inquiry to Mr. Preston asking for the record of her husband's claim. And her testimony was that she didn't remember doing that. If she did, it was – if it was a letter, it was prepared for her. If it was a phone call, it was probably made by her sister or a friend. So she – there is no evidence that she did anything within this critical eight-week period. Is it clear that the doctrine of equitable tolling applies at all? Oh, no. We have – we do not rely on equitable tolling. That is a different doctrine. This is a statutory tolling provision. And that's critical to our position. You're just relying on the statutory tolling. Yes. Yes. We recognize that equitable tolling is reserved for extraordinary cases. That's the quotation in virtually all. Statutory tolling. Would we have to conclude that the Board was in error because she didn't have a guardian, implying, I suppose, that she should have had a guardian or was entitled to a guardian or had demonstrated necessity for a guardian, something like that? Well, in retrospect, what the uniform testimony as to her condition during this period is, I think, yes, she would have qualified. We would look at what the State standards are for guardianship. Depending on what those standards are, yes. But whether they are – I mean, I don't know that those are any different from what we would say is the natural meaning of – You don't think a State superior court judge would have or could have properly appointed a guardian on this evidence. That's the end of it. The evidence is that she was lying on the floor on top of the dog that she and her husband had had crying full time and was unable to deal with anything and, again, when taken to Mr. Preston's office, was nonresponsive and nonparticipatory. I think that shows mental incompetence in the sense of – excuse me, Judge Mayotte. Do we review the factual basis for determination of mental incompetence or not de novo or do we grant some deference to the ALJ and to the Board? You certainly owe deference to the ALJ. As fact finder, you owe no deference whatsoever to the Benefits Review Board. But the – this Court's authority is clear that for something to constitute substantial evidence, it must logically bear on the question to be decided. And the fact that a guardian had not been appointed and that she had not been diagnosed with a mental illness during this period are the only evidence the ALJ relied on. The absence of – A little broader. Not diagnosed with or received any medical treatment for any mental impairment, I think is – Correct. Correct. And we don't actually contend that what disabled her, what rendered her – Good luck getting a guardian who can take away all of somebody's money when they've never even been to a doctor. Well, the point was that she – her caregivers, her caretakers at the time, recognized just what we all can recognize. That is, this was a temporary reaction. It was not psychopathology. It was severe grief. Now, there's no point in attempting to provide medical treatment for grief that is not pathological but is extreme. There is nothing to do but wait it out. If that person is – if that incapacity resulting from that severe grief is not exposing the person to being preyed upon, then there's no reason anyone would take them to court and take away their right, which will soon – their ability for which will soon return, take away their right to handle their own affairs. Thank you, counsel. Thank you very much. The police court, John Dudry for the employer and the insurer here. Is it correct, incidentally, that the way the statute – this statute of limitations works is that if a person is incompetent for, say, two months, then the statute just goes to 14 months? There's no authority one way or the other. It can be read that way. Have you conceded that? What we conceded was that the judge's understanding that she had to be incompetent for all 12 months was erroneous. So we've come close, but that's a slightly different issue. That's different. Yeah. And where the difference – I'm thinking of the ordinary tort case where the person – oh, gosh, I had a burn case where the person was hospitalized under a lot of narcotics for maybe six, eight months. It was a really bad burn case, but still had a two-year statute of limitations. Is this different? Well, I think it's different in this sense. I think you can read it unlike the same statute as it applies to a minor or Section 13d, which applies to – Minority is easy to ascertain, and it has a very distinct existence. Right. Once you're 18, you don't become 17 again. If I don't read it the way your opposing counsel suggests it should be read, explain to me how I read that language. It says if a person who is entitled to compensation under this chapter is mentally incompetent, the provisions of Subsection A, which is the time to file, shall not be applicable so long as such person has no guardian or other authorized representative. Well, I think you can read the statute as saying the claimant, Mrs. Morgan in this case, has 365 days, which I think answers Judge Kleinfeld's question.  How do I read the shall not be applicable so long as language? Well, okay. Let me back up to the first language. At the beginning of 13c, it talks about a person who – if a person who is entitled is mentally incompetent. So when does it start? It could be read that you've got to be mentally incompetent when the claim, the entitlement arises. But I think so long as would take out a period of time when there is mental incompetency. Whether a whole year is left or just the remainder of the period isn't clear from the language, nor is it clear from the regulation, which no one has cited, which pretty much parrots the statute. So we don't think she was ever mentally incompetent, so we haven't placed a lot of emphasis on that. What standard should we use to determine mental incompetency? I think the judge's, the ALJ's standard was a good one. She never lost the capacity for rational thought. And the claimant herself undermined the contention that's being made on her behalf. And the judge caught this. She said, I didn't really want to deal with anything. I didn't want to talk to anybody. I just wanted to be left alone. Which the judge found supported his finding, and it's at page 19 of the excerpts, that what we have is someone who is grieving, not someone who is mentally incompetent. And she said very much the same thing at the next page, or in the transcript at 236 of the excerpts. I wasn't making any decisions unless someone forced me to, and that was only then just a get-them-out-of-my-face kind of thing. Do we have a record citation as to when she signed up, Mr. Preston? We do. It's in the supplemental excerpts. It was two weeks after Mr. Morgan died, within a day or two. So if she could make a rational choice of who should represent her two weeks afterwards, then her, based on what the ALJ said, if she could make that rational choice, it would be at the most a two-week tolling of the statute. I think that's a reasonable conclusion, and he put a good deal of importance on the fact that Mr. Preston was retained so soon after the death. She did admit she knew she had retained counsel. The focus of this claim has shifted. Below, the focus was, well, but she didn't know that what she knew constituted a claim, which was not a good argument generally, nor in the long-short situation. And that argument's been abandoned. There's no contention that the statute didn't start but for tolling as soon as she learned of Mr. Morgan's death. So we have, without that argument, there's simply the was she mentally incompetent We also argued, because I agree with Mr. Gillelan, the Hogue case. I think she does make the other argument. She says, I didn't realize that I had a viable claim for death benefits until much later. Well, they've waived that. If you read the beginning of the brief, it's set out as one of the questions presented, and the statement of facts is clearly set up to make the argument, but then they don't make the argument. The statute itself simply says that you know or you have reason to know of the relationship between the injury or death and the employment. And she made that connection immediately. She admitted it. So that's why it's no longer an issue. It all depends on tolling and what mental incompetence is. We had pointed out that the New York standard was a pretty high bar, although that came from tort cases where the plaintiff was arguing, I was mentally incompetent. I didn't know what I was doing when I signed that release of my claims in the hospital. And that is if you don't know what you're doing or the character of your act and you don't understand it. And that's similar to the loss of the capacity for rational thought standard that the ALJ used. The other thing, and without even defining it, I think, well, you have to define it indirectly. The fact that the statute is stopped or the tolling is stopped by appointment of a guardian or other representative is key. If that's what stops the tolling, that's got to be what starts the tolling. And there's got to be some evidence that the, in this case, the claimant would qualify for that, as Judge Kleinfeld's question suggested. And I think in this case, Dr. Jacobson testified for the claimant about Mr. Morgan's mental state. Dr. Turco, a psychiatrist, testified for the employer about Mr. Morgan's mental state. And he was dead. I mean, there was no attempt to prove by medical evidence or even by an experienced family or probate lawyer that Mrs. Morgan would have qualified for a guardianship. And that is important, because I think without that standard, you really don't have any. I mean, hopefully. It's her burden? It's her burden to prove mental incompetence? Is that correct? We believe it is. And that's because, and the judge made this finding, is that the claim is untimely unless the claimant can save it through equitable or statutory tolling. Equitable tolling is out of the case. Just out of curiosity, my experience with guardianship is that there's a constant problem with them stealing. But I don't know if that's common or if it's just things I've run across. Are there some cases in Oregon about guardianship appointees that indicate whether they appoint them freely or reluctantly and whether they appoint them in conditions like this? Well, the burden is on the whoever it is who wants to have the guardian appointed and the protected person, which is the phrase that can weigh in. But that's not necessarily the final say on this. And this is another point. What do they need? What you've got here, taking the plaintiff's evidence as strongly as possible, you've got a woman in such deep mourning that she's entirely apathetic. Have there been any cases about appointment of guardians in those circumstances? I have found none. And the only one I found was that Hanchett case from Kansas, which involved the Kansas cognate to the Oregon statutes. I think it's important, too. Mr. Glellan's incapable of managing her affairs standard is way too broad. I couldn't imagine it, because I thought, boy, widows get life insurance. A lot of people are going to want to take real good care of them when they're in deep mourning. But I may just be imagining this, and I'd like to know if there's some authority where courts looked at it. Oregon is pretty broad. And this is, I think, by way of showing that what Mr. Glellan's suggesting is too broad. I mean, if I am too frail physically to manage my activities of daily living, I could qualify for a guardian or maybe a conservator. They're separate in Oregon. But I'm not mentally incompetent. I could be too frail to go to the bank or pay my bills, and I'd get a conservator. I'm not mentally incompetent. You don't have physical frailty here. You have, according to what we've been taking the case as good for the plaintiff as possible, you have deep mourning that puts a person in such an apathetic state that they're almost catatonic. Well, you know, again, her own statement was I didn't really want to do anything. Is there any law on guardianship appointments in these circumstances? I am aware of no Oregon law on that. And this case didn't – wasn't tried to the ALJ on the basis of Oregon law. I believe you don't have to be mentally incompetent to qualify for a guardian, but that's the point I just made, and that doesn't necessarily answer what mental incompetence is. You said something that doesn't quite fit with me. You said that under the statute, when a guardian is appointed, then the – whatever tolling has occurred up to that point ends. That's correct. And then you said, and that's the standard as to whether she's competent or not. If that were so, then there would never be any tolling for mental incompetency. Well, I – let me clarify that. And I – and that's – actually, that's the point I'm trying to make is I think there has to be evidence that Mrs. Morgan would have qualified for appointment one of a guardian, two on the ground of mental incompetence. But if she did qualify for that guardian, then there wouldn't be any tolling under the statute. Well, but none was appointed. Are you saying that she would be – if there was evidence that for the past six months she was mentally incompetent, therefore we appoint a guardian, you're not arguing that the prior six months would then be tolled, or are you saying – what exactly are you saying about that? Well, okay. I think the argument that's made on behalf of the claimant is, well, the judge erroneously said no guardian was appointed. There's no requirement that a guardian be appointed to establish tolling. I think you can take that point, but then the next point is would she have qualified for a guardian? Would her condition have constituted mental incompetence such that a guardian would have been appointed? If it did, then you could say tolling starts. At what point did she cease to need a guardian? At that point the statute says tolling ends. I mean, I think it's that flexible. So what is the standard for needing a guardian for mental incompetence? I couldn't tell you in Oregon, because I don't do that kind of law, but, again, the judge used a pretty strict standard, which I think is consistent with the New York law and with what Congress would have understood the term meant when it enacted the statute, and that's important. We cite the Wheaton case, this Court's decision last year. We look to the understanding at the time the statute was enacted to understand what it means. There's a brief effort on the part of the claimant to say, well, let's not use archaic terminology. But Wheaton says we look to the time of enactment. I would refer the Court also to the Potomac Collector Tower case, 449 U.S. at 279-280. Okay. And what is the standard? What is the standard? I think it's incapacity to know what you're doing or it's a fact. And that's implicit in what the judge said and it's explicit in the New York cases from the time. An opposed counsel says she met that standard, but you're saying there wasn't sufficient evidence or that the ALJ didn't err in saying there wasn't enough evidence to find that she met that standard. That's correct. He didn't feel she did. And he expressed it as incapacity to engage in rational thought or action. And he understood that she was saying because I was grieving, I didn't want to do anything. And that's his finding, which the Board affirmed. If nothing further, if the Court has no questions. Thank you, counsel. The appellant went through all his time, so Morgan v. Cascade is submitted.
judges: Kleinfeld, Bea, Ikuta